300 So.2d 106

STATE of Alabama ex rel. William J. BAXLEY, as Attorney General

v.

Leonard C. JOHNSON, as Supt. of Banks, etc.

SC 743: 743-X.

Supreme Court of Alabama.

Aug. 29, 1974.

**70**

William J. Baxley, Atty. Gen., and George M. Van Tassel, Jr., Asst. Atty. Gen., for the State.

Calvin M. Whitesell, Montgomery, for appellee.

G. Sage Lyons and Wesley Pipes, Mobile, for First Federal Savings & Loan Assn. of Mobile, amicus curiae.

Robert S. Lamar, Jr., Montgomery, for Beneficial Finance Co. of Alabama, amicus curiae.

Truman M. Hobbs and Howard C. Oliver, Montgomery, for Alabama Consumer Finance Assn., amicus curiae.

Ormond Somerville and C. John Holditch, Birmingham, for Cobbs, Allen & Hall Mortgage Co., Inc., amicus curiae.

William W. Johnson, Jr., Birmingham, Robert J. Russell, Montgomery, for Alabama Assn. of Realtors, amicus curiae.

Jerry E. Stokes and J. Fred Powell, Birmingham, for Molton, Allen & Williams, Inc., amicus curiae.

William B. Hairston, Jr., Birmingham, Norman W. Harris and William E. Shinn, Jr., Decatur, John P. McKleroy, Jr. and R. Foster Etheredge, Birmingham, for Johnson-Rast & Hays Co., amicus curiae.

Jack L. Capell, Montgomery, Frank Dominick, Birmingham, John S. Glenn, Opelika, Ormond Somerville and C. John Holditch, Birmingham, for Investors Federal Savings and Loan Assn., Montgomery, Ala., First Federal Savings and Loan Assn. of Alabama, Birmingham, Ala., Tuscaloosa Federal Savings and Loan Assn., Tuscaloosa, Ala., First Federal Savings and Loan Assn., Huntsville, Ala., First Federal Savings and Loan Assn. of Lee

County, Opelika, Ala., First Federal Savings and Loan Assn. of Montgomery, Montgomery, Ala., First Federal Savings and Loan Assn. of Coffee County, Enterprise, Ala., amicus curiae.

Rosen, Wright, Harwood & Albright, Tuscaloosa, for First Mortgage Co., Inc., amicus curiae.

James J. Odom, Jr., Birmingham, for Birmingham Association of Homebuilders, Inc., amicus curiae.

Haltom & Patterson, Florence, for Homebuilders Assn. of Alabama, amicus curiae.

Douglas P. Corretti, Birmingham, for Birmingham Board of Realtors, Inc., amicus curiae.

Phelps, Owens & Jones, Tuscaloosa, for First Federal Savings and Loan Assn. of Tuscaloosa, First Federal Savings and Loan Assn. of Jasper, First Federal Savings and Loan Assn. of Fayette, First Federal Savings and Loan Assn. of Chilton County, amicus curiae.

Hill, Hill, Carter, Franco, Cole & Black and Philip S. Gidiere, Jr., Montgomery, for Montgomery Board of Realtors, amicus curiae.

R. B. Jones and Roger M.. Monroe, Birmingham, for L. K. Jones, C. J. Millican and Harry N. Griffin, as Class Representatives, amicus curiae.

Barnett, Tingle & Noble, Birmingham, for Collateral Investment Co., amicus curiae.

James W. Webb, Montgomery, for United Virginia Mortgage Corp., amicus curiae.

PER CURIAM.

The original opinion this case, announced July 25, 1974, is withdrawn, this opinion substituted therefor, and the rehearing is granted.

This is an appeal from a declaratory judgment in a proceeding brought by the Attorney General against the Superintendent of Banks of the State of Alabama.

The gist of the bill for declaratory judgment, as last amended, is that the Attorney General alleges that "certain lending institutions" pursuant to Act No. 2052, Acts of Alabama 1971, Vol. IV, p. 3290, listed in the 1958 Recompilation as Tit. 5, §§ 316–341, and known as the Mini-Code, are making loans to individuals in amounts of $2,000.00 to $100,000.00 in excess of the interest amounts prescribed in Tit. 9, §§ 60 and 61, Code 1940; that the closing costs charged by "certain lending institutions" on these loans of 2% to 5% of the principal amount as a finance charge are in excess of the amount allowed in § 2 of the Act; and that the State Superintendent of Banks "has failed to order these institutions to cease and desist making finance charges at rates above those approved in Tit. 9, §§ 60 and 61, Code of Alabama 1940." (§§ 60 and 61 fix interest rates at 6% and 8%.)

On the day set for trial, September 5, 1973, the parties were present and six attorneys representing the mortgage banking industry and the savings and loan industry appeared as amici curiae. The Assistant Attorney General stated that "we feel that there is a great deal of confusion in the State of Alabama as to the interest rates and finance charges allowable under the Mini-Code and as to the various items that go into the finance charge." He also stated that "there are numerous persons here who desire to be heard as amicus curiae and the parties to this suit feel it would be to the best interest of clarity and also in the interest of brevity to allow these people * * * to call witnesses and to examine them and we feel like this would be the most effective way to get the facts out in order to reach a determination of this question."

Counsel representing the Superintendent of Banks stated: "Your Honor, I have no Opening Statement to make at this time except that the Superintendent of Banks

has no position in the case except, of course, to defend the lawsuit itself and I believe in my discussions with the various counsel representing amicus curiae that they are fully prepared with the consent of the Court to present their cases in response to the Attorney General's suit."

One counsel spoke for the amici curiae and stated in part:

" * * * the various counsel representing the various amicus curiae proposed to start with the mortgage banking industry and to be supplemented by the savings and loan industry and present some technical testimony for the Court. The mortgage banking industry, as Your Honor may very well know, is primarily engaged in making loans to homeowners and businesses. Most frequently, importing money from outside the State of Alabama into Alabama because Alabama is basically a borrower state in that it does not generate enough money for its own economic growth, the problems which exist are most acute in connection with that type of operation. Prior to the adoption of the Minicode we were, of course, governed by Title 9, Section 60 and Section 61. The Minicode was adopted as a result of various compromises like most legislation and in the course of the give and take of the legislative process unfortunately every eventuality was not tied down as tightly and as neatly as needed to be done. * * *

\* \* \* \* \* \*

" * * * So, the first question that needs clarification is, what is the maximum interest rate in Alabama that is legal. The second question involves the definition of finance charge and the use of the finance charge in computing the miximum rate allowable under the Minicode. * * *"

He then stated that they wished to introduce evidence "to show the nature of the problem." Four witnesses, officers of various amici curiae, testified, and the only evidence of the two parties was a written stipulation signed by their respective counsel as follows:

"The parties in the above-styled cause have agreed to stipulate for purposes of this case that certain persons and/or institutions who regularly extend credit and make finance charges pursuant to Act No. 2052 are charging rates in excess of that allowed by Title 9, Section 60 and 61, Code of Alabama 1940, Recompiled."

The bulk of the evidence and exhibits dealt with mortgage loans on real estate.

The trial court found against the contentions of the Attorney General and in conformity with the position taken by amici curiae.

■■ We are convinced that this lawsuit is a sham, contrived to secure an advisory opinion on the Mini-Code and that it presented no justiciable controversy between the parties. While Tit. 55, § 229, authorizes the Attorney General to institute suits "necessary to protect the rights and interests of the state," that statute does not authorize the institution of this suit as will now be demonstrated.

Since both parties to this suit stipulated that real estate loans are being made at an interest charge in excess of 8%, surely some institution could have been found to be made a party defendant who could have justified the charge under the Mini-Code. (Plenty of institutions and organizations appeared as amici curiae.) But the Attorney General, the chief attorney for the state, chose as defendant another state official, the Superintendent of Banks. It just so happens that this official had a perfect defense to the charge that he, as such superintendent "has failed to order these institutions to cease and desist making finance charges at rates above those approved in Title 9, Sections 60 and 61." The superintendent's perfect defense is that Section 18(a) of the Mini-Code (Tit. 5, § 333) exempts banks, savings and loan associations, credit unions and life insur-

ance companies from licensing under the Act. Section 25 of the Act (Tit. 5, § 340) exempts FHA and VA loans. The Superintendent of Banks is named the administrator of the Act but the superintendent points out in his brief the exemptions we have noted. It is obvious that he cannot apply any penalties to institutions named supra or license them.

It will be recalled that the Superintendent of Banks had "no position to take" in this suit except, of course, to be present and defend as he was the only named defendant.

The Attorney General appealed and the Superintendent of Banks cross-appealed but their assignments and cross-assignments cover the same numbered holdings of the trial court, with the exception that the Attorney General's assignments are more numerous. They cover every finding made by the trial court except the holding that the court had jurisdiction and the suit was properly brought under Tit. 55, § 229, Code 1940.

The record before us depicts a case, a trial, and an appeal between a plaintiff and defendant who had no real differences be-between themselves, but the trial and the appeal were for the accommodation of the institutions which appeared as amici curiae in the trial court and later filed a brief in this court. When the cause was submitted here, there still was no justiciable controversy between the parties. The brief of amici curiae sought to uphold the decree of the trial court in all particulars; and these particulars dealt with real estate loans and mortgages.

The crowning event occurred in this court. The opinion of July 25, 1974, now withdrawn, agreed with the main points argued by the Attorney General and the defendant; and the judgment of the circuit court was reversed and one here rendered. The effect was that the Attorney General won his case in this court. The defendant also won to the extent that its cross-assignments of error partially prevailed.

The amici curiae, not being parties, could not ask for a rehearing so the Attorney General asked for the rehearing.

■ There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545; City of Mobile v. Jax Distributing Co., 267 Ala. 289, 101 So. 2d 295.

"The declaratory judgment statutes do not empower courts to decide moot questions, abstract propositions or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases." Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So.2d 619. See also Holland v. Flinn, 239 Ala. 390, 195 So. 265 [3], and City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 [13].

Whether the complaint, as last amended, presented a justiciable controversy we do not need to decide, but when the only defendant in the case took no position and the statute under consideration stated that the defendant was without power to apply the Act to the institutions involved in the case, there was no longer a justiciable controversy and one has not existed in the instant case since. Under those circumstances, the decree of the trial court was void. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545.

An appeal will not lie to reverse a void decree. *Scott,* supra, Capps v. Norden, 261 Ala. 676, 75 So.2d 915.

An appeal from a void decree must be dismissed. *Scott,* supra; Shade v. Shade, 252 Ala. 134, 39 So.2d 785.

■ Since there was no justiciable controversy and only a "straw-man" defend-

ant, the decree of the trial court was void, would not support an appeal and the appeal must be dismissed.

The question naturally arises as to why this court wrote an opinion (the one withdrawn) under the existing circumstances. Every justice who participated in the decision was under the impression that the friends of the court were intervenors. (The opinion stated: "The following organizations intervened: * * *.") The record shows that the amici curiae present in court and represented by counsel were: Alabama Savings & Loan Association, The Jackson Company, Engle Mortgage Company, Alabama Bankers Association, Alabama Consumers Finance Association and Mortgage Bankers Association of Alabama. We mistakenly treated them as intervenors, and as such, they had sufficient interest in the case to treat them as bona fide parties. But their spokesman referred to them as amici curiae and their briefs in this court list them as amici curiae. The record does not show that any of them ever sought leave or permission to intervene, and none of them became an intervenor under Rule 24, ARCP. They remained amici curiae.

■ None of amicus curiae was a party to this suit, and if any of its rights are jeopardized by this suit, it is entitled to its day in court, when and if it is damaged and it seeks a remedy. This court will not decide a question presented by amicus curiae which was not presented by the parties to the cause, and will leave the question for decision when properly raised and presented. Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 53 So.2d 619.

In Village of North Atlanta v. Cook, 219 Ga. 316, 133 S.E.2d 585, the Supreme Court of Georgia stated:

" 'The literal meaning of the term "amicus curiae" is a friend of the court, and the term includes persons, whether attorneys or laymen, who interpose in a judicial proceeding to assist the court by giving information, or otherwise, or who conduct an investigation or other proceeding on request or appointment therefor by the court.' 4 Am.Jur.2d, Amicus Curiae, § 1, p. 109. A person appearing as amicus curiae is not a party or privy in an action. Douglas v. Trust Company of Ga., 147 Ga. 724, 95 S.E. 219.

\* \* \* \* \* \*

" * * * The function of an amicus curiae 'is to call the court's attention to law or facts or circumstances in a matter then before it may otherwise escape its consideration. * * * He has no control over the litigation and no right to institute any proceedings therein, he must accept the case before the court with the issues made by the parties.' 4 Am.Jur.2d, Amicus Curiae, § 3, pp. 110, 111. * * *"

■ An amicus curiae is not a party, cannot assume the functions of a party, and cannot control the litigation. Kemp v. Rubin, 187 Misc. 707, 64 N.Y.S.2d 510; In re Ohlhauser's Estate, 78 S.D. 319, 101 N.W.2d 827.

■ The amicus curiae may, with permission of the court file briefs, argue the case and introduce evidence. 4 Am.Jur.2d, Amicus Curiae, § 4, p. 113; 3A C.J.S. Amicus Curiae § 9, p. 433; In re Perry, 83 Ind.App. 456, 148 N.E. 163.

We are not to be understood as being critical of the named amici curiae in this case. They appeared in both the trial court and in this court not only with the permission of the respective courts, but also by the agreement of the two parties. We merely point out that they did not appear as intervenors as we thought originally.

■■ We also state that the Attorney General has the right and power to file

suits for declaratory judgment. But the parties must be damaged and seeking a remedy, not just advice, and there must be a bona fide justiciable controversy. Those elements are not present here.

When this opinion is finally published in the Alabama Reports, it will list more amicus curiae briefs than the original because other law firms requested the right to file briefs after the opinion was released. The original amici curiae, who are mentioned several times and are specifically named in the opinion, are the only ones to whom the term is applied in the factual statements in this opinion.

The withdrawn opinion now has no efficacy and since its conclusions were erroneous in the opinion of the justices who concurred, it is not to be taken as any indication of their individual or collective position on the question sought to be presented if and when it may come before this court again.

Since the judgment of the trial court was void because of the lack of a justiciable controversy between the parties, and since a void judgment will not support an appeal, it follows that the judgment is set aside and the appeal is dismissed. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545.

Rehearing granted.

Appeal dismissed.

MERRILL, COLEMAN, HARWOOD, FAULKNER and JONES, JJ., concur.

JONES, Justice (concurring specially).

I am in complete accord with this opinion. The Office of the Attorney General allowed itself, wittingly or unwittingly, to be "used" and in turn sought to "use" this Court in order to get an advisory ruling favorable to the parties amici curiae with respect to the 8% "add on" interest on real estate mortgages under the Mini Code. The narrow scope of review invoked by the issues argued and presented by appellant (e.g., no constitutional issues were raised) is indicative of the "sweetheart" nature of the proceedings.