COOK, Justice.
The petitioner or appellant in two of these four cases is the State of Alabama, upon the relation of Governor Fob James and Attorney General Bill Pryor, and the appellant in the other two is Judge Roy Moore of the Etowah Circuit Court. They seek review of a judgment entered in the Montgomery County Circuit Court declaring certain aspects of Judge Moore’s courtroom decorum and practice to violate the Establishment Clause of the First Amendment of the United States Constitution. We dismiss these four cases.
The events out of which this litigation arose began in 1993, with a series of correspondence initiated by Joel Sogol, on behalf of 'the American Civil Liberties Union of Alabama (“ACLUA”). On June 9, 1993, So-gol drafted a letter to Sonny Hornsby, then Alabama Supreme Court Chief Justice, stating in pertinent part:
“This letter comes in an attempt to avoid litigation involving a number of judges in this State. We have received complaints from people in a large number of circuits regarding prayers prior to jury week terms. Generally, these situations will involve a judge inviting a preacher or minister to give the prayer just after the jury has been sworn in.
“I have enclosed for you a copy of North Carolina Civil Liberties Union Legal *955 Foundation v. Constangy, which I believe to be the most current case on point. As you can see, the 9th Circuit held the practice of prayer before court unconstitutional, and we are prepared to go to court if necessary. It is my hope that in your capacity of Chief Justice, you would be willing to put a stop to this practice, and that litigation would then be unnecessary.”
On June 25,1993, Oliver Gilmore, administrative director of courts, responded to the ACLUA by the following letter:
“This is in response to your letter, dated June 9, 1993, to Chief Justice Sonny Hornsby regarding the practice of having prayers in the courtroom at the beginning of jury sessions. We intend to bring this matter to the attention of the Presiding Circuit Judges at their meeting on Wednesday, July 14,1993, and to provide them with ... copies of your letter to the Chief Justice, as well as the Constangy case.”
On July 6, 1994, Sogol sent another letter to Chief Justice Hornsby, stating in pertinent part:
“Approximately one year ago, I wrote you regarding judges having prayers recited in court. In an effort to avoid litigation, I asked you, as the administrative head of the State Judicial System, to stop that practice. In the time that has passed, some judges have complied. Unfortunately, many have not, and in fact, some have gotten worse.
“I again appeal to you in your administrative capacity to halt this unconstitutional conduct on the part of judges. I enclose the Constangy case and the Harvey case for your review. Given the scarce resources of our judicial system, it seems a shame to squander funds in this type litigation. However, if no action is forthcoming from within the system, I will have no choice but to file suit.”
Litigation subsequently began, with the filing of a complaint in the United States District Court for the Northern District of Alabama by (1) the Alabama Freethought Association (“AFA”), (2) Gloria Hersheiser, and (3) Herb Stappenbeck and Barbara Stappenbeck, against Judge Roy Moore of the Etowah County Circuit Court. Alabama Freethought Ass’n v. Moore, 893 F.Supp. 1522, 1524-25 (N.D.Ala.1995). The complaint contained the following allegations: (1) that a number of members of the AFA, along with Hersheiser and the Stappen-becks, were residents of Etowah County, and, consequently, were “subject to attending Judge Moore’s courtroom in Gadsden, either as jurors, litigants, witnesses or observers,” id. at 1525 (emphasis in original); (2) that Judge Moore “has caused a plaque depicting the Ten Commandments to be hung behind the bench in his courtroom” and that “in presiding over jury organizing sessions, [he] has caused prayer to be uttered,” id. at 1524; (3) that the pre-session prayer and display of the Ten Commandments violates the Establishment Clause of the First Amendment to the United States Constitution; and (4) that, as a result of these practices, the plaintiffs, should they be called to appear in Judge Moore’s courtroom, “would be, offended” and would be required to “assume special burdens to avoid [the allegedly] unconstitutional conduct.” Id. at 1525 (emphasis in original). On April 21, 1995, Judge Moore “filed a Motion to Dismiss, or in the Alternative, for Stay,” in which he contended, among other things, that the plaintiffs lacked “standing, as either citizens or taxpayers, to maintain this action.” Id. at 1524.
The same day, the State of Alabama, upon the relation of Governor Fob James and then Attorney General Jeff Sessions, filed a complaint in the Montgomery County Circuit Court. The case was assigned to Circuit Judge Charles Price. The complaint named as defendants the American Civil Liberties Union of Alabama (the “ACLUA”) and Judge Roy Moore. It also named as defendants (1) the AFA, (2) Gloria Hersheiser, and (3) Barbara and Herb Stappenbeck (hereinafter collectively designated the “AFA”). The complaint contained the following factual allegations:
“7. Defendant the Honorable Roy S. Moore (‘Moore’) has been a judge of the Circuit Court of Etowah County since November 1992. When Judge Moore became a circuit judge, the Circuit Court of Eto-wah County began its commissioning of jurors with a prayer, including, for example, a call on God to save the Court and an expression of thanks for due process of law.
*956 “8. This practice has occurred for many decades in the Circuit Court of Eto-wah County.
“9. The Supreme Court of the United States and other courts of the United States open their sessions with a prayer requesting God to save the court, and the Supreme Court has used this practice, or a similar one, for over two centuries.
“10. The opening sessions of deliberative public bodies with prayer is deeply embedded in the history and tradition of this country.
“11. Defendant Moore has continued the practice of opening sessions of the Etowah County Circuit Court with prayers since becoming a circuit judge.
“12. In addition, Defendant Moore has placed on the wall of the courtroom where he presides, a plaque of the Ten Commandments, which Judge Moore hand-carved. Judge Moore also has displayed in his courtroom artistic renderings of other important documents related to American history: the Declaration of Independence and the Mayflower Compact. Moore also has displayed large pictures of George Washington and Abraham Lincoln. All of the items have been displayed by Moore for most of the period of time Moore has been a circuit judge.
“13. The chamber of the Supreme Court of the United States contains a depiction of Moses with the Ten Commandments.
“14. Defendant Moore has announced that he believes it impossible to sit in judgment of others without the guidance of God, and Judge Moore believes that the display of the Ten Commandments and the use of prayer to open Court is a logical necessity and a reasonable acknowledgment of the presuppositions upon which the American government and civilized society are based.
“15. Defendant Moore does not engage in proselytizing during the course of performing his duties as a circuit judge for the State of Alabama.
“16. Judge Moore’s acknowledgments of God serve legitimate secular purposes of solemnizing court proceedings, expressing confidence in the future, and encouraging recognition of what is worthy of appreciation in society.
“17. These acknowledgments are not understood as conveying government approval of particular religious beliefs, and cannot be fairly understood as conveying such government approval of particular religions so as to amount to an ‘establishment’ of religion. ■
“18. In June 1994, the ACLU of Alabama demanded that the State Judicial Department halt any circuit judge from allowing jury sessions to begin with prayer and further threatened litigation if the practice continued.
“19. The policy of the State of Alabama is to allow judges to preside over their courtrooms in the manner they see fit for conducting proceedings involving the rights of citizens of Alabama and of the United States. There is no State policy either requiring or prohibiting the opening of court proceedings with a prayer nor is there a state policy either requiring or prohibiting the depiction of the Ten Commandments on the walls of a courtroom.
“20. The State of Alabama, through its Judicial Department, has supervisory authority over its circuit judges and the manner in which they conduct proceedings. Judges are constitutional officers of the State of Alabama paid a base salary by the Comptroller of the State of Alabama.
“21. There are or may be other circuit judges in the Judicial Department that engage in some or all of the practices described above.
“22'. The Constitution of Alabama reflects an acknowledgment of God’s role in the foundation of the government and the rights of citizens. The [Constitution] of Alabama declares that the rights of its citizens come from a Creator and does so by tracking substantially the language of the Declaration of Independence. The constitution of Alabama provides in article I, section 1, that ‘all men are created equally free and independent; they are endowed by their Creator with certain inalienable rights, that among these are life, liberty, and the pursuit of happiness.’
“23. The Preamble to the Constitution of Alabama recites that this state government was established by the people of *957 Alabama seeking ‘the favor and guidance of Almighty God’ for the purpose of ‘establish[ing] justice, insur[ing] domestic tranquility, and seeurting] the blessings of liberty.’
“24. The constitution of Alabama provides for the protection of religious freedom and prohibits the establishment of religion by law. Article I, section 3, provides as follows:
“ ‘That no religion shall be established by law; that no preference shall be given by law to any religious sect, society, denomination, or mode of worship; that no one shall be compelled by law to attend any place of worship; nor to pay any tithes, taxes, or other rate for building or repairing any place of worship, or for maintaining any minister or ministry; that no religious test shall be required as a qualification to any office or public trust under this state; and the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles.’
“25. Plaintiff seeks to determine, in part, that Defendant Moore’s actions do not violate these provisions of the Constitution of Alabama.
“26. Defendants Alabama Freethought Association, Hersheiser, and Stappenbeek have asserted that they are offended by the prayers occurring in Defendant Moore’s courtroom and the display of the carving of the Ten Commandments. They have filed a lawsuit in federal court against Defendant Moore alleging that such practices violate the establishment ... clause of the First Amendment to the U.S. Constitution, and article I, section 3, of the Alabama Constitution. These defendants have not been litigants or jurors in proceedings over which Defendant Moore has presided.
“27. Plaintiff contends that, under the Eleventh Amendment of the U.S. Constitution, the federal court in which Defendants Alabama Freethought Association, Her-sheiser, and Stappenbeek have brought their action does not have jurisdiction to decide the claims made under the Alabama Constitution. The plaintiff and Judge Moore also contend that the federal court must, under federal law, abstain from hearing this controversy while this matter is before the courts of this State. The plaintiff is interested in the quickest possible resolution of this issue in a court that is competent to decide all of the issues raised by these defendants.”
(Emphasis added.)
The State’s “demand for judgment” was expressed as follows:
“WHEREFORE, the State of Alabama requests a judgment
“A. declaring that the State of Alabama’s policy allowing judges to preside over their courtrooms as they see fit and declining to prohibit Defendant Moore and other circuit judges from, engaging in the conduct described herein, despite knowledge thereof, is not violative of the Establishment Clause of the First and Fourteenth Amendments to the U.S. Constitution or article I, section 3, of the Alabama Constitution.
“B. declaring that the Defendant Moore’s display of a carving of the Ten Commandments on the wall of his courtroom is not in violation of the Alabama Constitution, article I, section 3;
“C. declaring that the Defendant Moore’s display of a carving of the Ten Commandments on the wall behind his bench in his courtroom is not in violation of the First and Fourteenth Amendments to the United States Constitution;
“D. declaring that the Defendant Moore’s continuation of the long-standing practice of holding prayer by a minister or lay person to open proceedings of his court is not in violation of the Alabama Constitution, article I, section 3; and “E. declaring that the Defendant Moore’s continuation of the long-standing practice of holding prayer by a minister or lay person to open proceedings of his court is not in violation of the First and Fourteenth Amendments to the United States Constitution.”
(Emphasis added.) The complaint sought no relief from actions of the AFA or the ACLUA.
Judge Moore answered the State’s complaint and admitted the substantive allega *958 tions in every paragraph of the complaint seriatim, with one exception. That exception was ¶ 20, in which the relators alleged that circuit judges were subject to the direction and control of the State, acting through the “Judicial Department.” He counterclaimed against the State on the basis of that disagreement. In his counterclaim he sought a “judgment declaring that the State of Alabama does not have authority to prohibit Defendant Moore, or any other circuit judge, from displaying the Ten Commandments in his courtroom or from having a prayer at the beginning of court.” In all other respects, however, Judge Moore “join[edJ with the State of Alabama in requesting a judgment” declaring that the challenged practices were constitutional. (Emphasis added.)
On May 22, 1995, the AFA and the ACLUA filed a “notice of removal” of the action to the United States District Court for the Middle District of Aabama. The State contested removal. Judge Moore, the only other defendant, not only refused to join in the removal request, but, like the State, objected to removal. He filed a “motion to remand” the cause to the state court. Because of the position taken by Judge Moore, the district court remanded the cause.
Meanwhile, on July 7, 1995, the United States District Court, in which this litigation was commenced, dismissed the action, without prejudice. Alabama Freethought Ass’n v. Moore, 893 F.Supp. 1522, 1545 (N.D.Ma.1995). That court issued a written opinion in which it agreed with the assertion of Judge Moore in his “Motion to Dismiss, or in the Aternative, for Stay,” namely, that the AFA, Hersheiser, and the Stappenbecks, plaintiffs in the district court, lacked “standing, as either citizens or taxpayers, to maintain [the] action.” Id. at 1524, 1544-45. That judgment was not appealed.
On December 8, 1995, Judge Moore cross-claimed against the ACLUA, seeking, among other things, to enjoin it from participating in litigation to challenge his courtroom practices. On January 8, 1996, the ACLUA and the AFA filed an answer to Judge Moore’s crossclaim.[1]
On May 13, 1996, the ACLUA and the AFA filed counterclaims against the State of Aabama, seeking declaratory and injunctive relief. More specifically, they sought to enjoin the State of Aabama (1) from permitting “circuit judges, including Judge Roy Moore, ... to open public court proceedings with prayer in the presence of ... jurors” and (2) from “permit[ting] the depiction of the Ten Commandments on the walls of public courtrooms as an acknowledgment of G-d, ... without regard to whether ... the depiction ... is displayed ... in any context other than a religious one.”
On May 21, 1996, the State moved to dismiss all the counterclaims. The relators contended that “they had filed suit not as officials of the state, but rather on relation of the state. Accordingly, they contended, the counterclaims actually had been filed against the state itself and were barred by sovereign immunity.” Response ofACLU of Alabama and Related Defendants to Petition for Writ of Mandamus, at 5 (emphasis added).
In response to these contentions, the AFA amended its counterclaim to add as a counterclaim defendant Perry 0. Hooper, Sr., in his official capacity as Chief Justice of the Aabama Supreme Court. On July 1, 1996, the trial court dismissed the “counterclaims of the defendants ... insofar as they state a cause of action against the State of Aa-bama.” On July 9,1996, the ACLUA made a claim against Chief Justice Hooper by expressly joining the amended counterclaim of the AFA. Judge Moore did not amend his counterclaim, and, consequently, does not have a claim against Chief Justice ■ Hooper.
On July 17, 1996, Chief Justice Hooper moved the trial court to dismiss the counterclaims against him, contending:
“1. The counterelaim[s] fail[ ] to state a claim against [him],
“2. As a matter of law, Chief Justice Hooper, by himself, has no authority to control the conduct of a circuit judge.
“3. Chief Justice Hooper, standing alone, has no legal authority to control what items are displayed on the walls of a trial courtroom. Specifically, Chief Justice Hooper has no legal authority to control *959 the decoration of Judge Moore’s (or Judge Price’s or any circuit judge’s) courtroom.
“4. Chief Justice Hooper, standing alone, has no legal authority to control the speech or prayers of any person in any trial courtroom in the State of Alabama. Chief Justice Hooper has no legal authority to prohibit any person or group of persons from praying in a trial courtroom.”
(Emphasis added.) The trial court denied that motion.
On August 29, 1996, the State and Chief Justice Hooper petitioned this Court for a ■writ of mandamus directing the trial court to “vacate [its] orders allowing the counter-claimfs] against Chief Justice Hooper and [to] dismiss [those] counterclaim[s].” That petition is now before this Court (case 1951975).
On November 22, 1996, the trial court entered an order stating in pertinent part:
“This case is submitted for final determination by the court on the pleadings, the evidence, and on the briefs and oral arguments of the parties.
[[Image here]]
“1. It is hereby DECLARED that the practice or policy of permitting Alabama’s circuit judges, and/or of circuit judges’ undertaking on their own to conduct or arrange for prayer, including the prayer of a particular faith, in public courts and in the presence of individuals who have been summoned by iegal process for jury duty, violates the First and Fourteenth Amendments to the United States Constitution and Article I, § 3, of the Constitution of Alabama.
“2. It is hereby DECLARED that the display of the Ten Commandments in the courtroom intermingled with the historical and/or educational items does not violate the First and Fourteenth Amendments of the United States Constitution and Article I, § 3, of the Constitution of Alabama.”
(Emphasis added.) The trial court enjoined Judge Moore “from arranging for or otherwise permitting prayer in court and in the presence of individuals who have been summoned by legal process for jury duty.” It further ordered the “eounter[claim]-defen-dants in their official capacities] ... to take all reasonable steps to prevent the conduct of unconstitutional prayer in the public courts . .■. and to take all reasonable steps to have ... any and all ... judges of the State of Alabama to immediately cease and desist from acting in this unlawful manner.” (Emphasis in original.)
On December 3, 1996, the ACLU and the AFA moved for “reconsideration” of the Ten Commandments issue. On December 30, 1996, Judge Moore appealed the November 22 judgment. The appeal of that judgment is designated as ease 1960572.
On February 10, 1997, the trial court reconsidered its holding on the display and entered an order stating in part: “Based on the fact that the plaques are hanging in the courtroom on the wall alone for the obvious and stated purpose of promoting religion, the court finds that their presence as displayed, is a violation of the Establishment Clause of the United States Constitution and the Constitution of Alabama.” The trial court" ordered Judge Moore to choose whether (1) to integrate the plaques within “a larger display of nonreligious and/or historical items,” or (2) to remove the plaques.
On February 19, 1997, Judge Moore also appealed from that judgment. Judge Moore’s second appeal is designated as case 1960839. On March 5, 1997, the State appealed from both judgments, namely, the one entered on November 22, 1996, and the one entered on February 10, 1997. The State’s appeal is designated as case 1960927.
Following these notices of appeal, an impressive number of amici curiae filed briefs in this Court. While the appeals were pending, we received a considerable amount of correspondence from private persons expressing support for one side or the other. From its inception, this litigation has attracted the attention of the national news media, as well as that of the local media.
It is clear, therefore, that this litigation has ignited a public controversy. It does not follow, however, that the controversy is one that is justiciable. Indeed, whether it involves a bona fide, justiciable controversy is a matter into which we must inquire, ex *960 mero motu in- this instance, as a threshold issue.[2] Resolution of this inquiry will necessitate separate discussions of the justiciability of the claims of (1) the original plaintiff, the State of Alabama, and (2) the counterclaim plaintiffs,' the ACLUA and the AFA

I. The Claims of the Plaintiff

Not all controversies, even very public ones, are justiciable. Justiciability is a compound concept, composed of a number of distinct elements. Chief among these elements is the requirement that a plaintiff have “standing to invoke the power of the court in his behalf.” Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990). Unless a plaintiffs interest in acquiring a favorable judgment is one that is “tangible,” Reid v. City of Birmingham, 274 Ala. 629, 689, 150 So.2d 735, 744 (1963), and “concrete,” Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala.1983), he has no standing to assert his claims. Moreover, as we explained in Reid:
“ ‘Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court’s jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable.’ ”
274 Ala. at 639, 150 So.2d at 744 (quoting E. B orchard, Declaratory Judgments, 29-30) (emphasis added). Thus, “‘[t]he absence of adversary or the correct adversary parties is in principle fatal’ ” Rogers v. Alabama Bd. of Educ., 392 So.2d 235, 237 (Ala.Civ.App. 1980) (quoting. E. Borehard, Declaratory Judgments 76 (2d ed.1941)) (emphasis added). See also Stamps, 642 So.2d at 944.
These principles were thoroughly discussed and applied in State ex rel. Baxley v. Johnson, 293 Ala. 69, 300 So.2d 106 (1974). That case involved an action commenced by the State upon the relation of the attorney general, “against the Superintendent of Banks of the State of Alabama.” 293 Ala. at 71, 300 So.2d at 106. The State purported to seek a judgment declaring that “certain lending institutions,” which were subject to provisions of the Mini-Code, currently codified at Ala.Code 1975, §§ 5-19-1 to -32, were imposing finance charges in excess of then existing interest and usury provisions. 293 Ala. at 71, 300 So.2d at 108‘. The State alleged that the superintendent had “failed to order [the] institutions to cease and desist making finance charges at rates above” the amounts prescribed by statute. Id.
Present at the trial of the “cause” were the parties and representatives of a group of lending institutions that were appearing only as amici curiae. The assistant attorney general representing the State stated: “[W]e feel that there is a great deal of confusion in the State of Alabama as to the interest rates and finance charges allowable ... and as to the various items that go into the finance charge.’” Id. (Emphasis added.) Counsel for the superintendent of banks asserted that the superintendent “ha[d] no position in the case except, of course, to defend the lawsuit itself.” 293 Ala. at 71-72, 300 So.2d at 108 (emphasis added). '
No pertinent facts were in dispute. The State and the superintendent stipulated “that certain ... institutions who regularly extended] credit and [made] finance charges ... [were] charging rates in excess of that allowed by Title 9, Section[s] 60 and 61, Code of Alabama 1940, Recompiled [current version at Ala.Code 1975, §§ 8-8-1 and -2].” 293 *961 Ala. at 72, 300 So.2d at 109. “The trial court found against the contentions of the Attorney General and in conformity with the position taken by amici curiae,” and the State appealed. Id.
This Court dismissed the appeal, stating: “We are convinced that this lawsuit is a sham, contrived to secure an advisory opinion on the Mini-Code and that it presented no justiciable controversy between the parties.” 293 Ala. at 72, 300 So.2d at 109 (emphasis added). The dispositive facts leading to that conclusion were (1) that the State chose to sue only the superintendent, another state official, not one of the entities said to be violating the statutory scheme, and (2) that the superintendent, who took no adversarial position, had a complete defense to any judgment that could have been entered in the case. That was so, because the Mini-Code expressly exempted those lending institutions appearing as amici from licensing, thus effectively placing them beyond the superintendent’s control. 293 Ala. at 72-73, 300 So.2d at 109.
The Court explained:
“The record before us depicts a case, a trial, and an appeal between a plaintiff and defendant who had no real differences between themselves, but the trial and the appeal were for the accommodation of the institutions which appeared as amici curiae in the trial court, and later filed a brief in this court.
[[Image here]]
“ ‘The declaratory judgment statutes do not empower courts to decide moot questions, abstract propositions or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases.’ ...
“... [Wjhen the only defendant in the case took no position and the statute under consideration stated that the defendant was without power to apply the Act to the institutions involved in the casé, there was no longer a justiciable controversy and one has not existed in the instant case since. Under those circumstances, the decree of the trial court was void. ...
[[Image here]]
“Since there was no justiciable controversy and only a ‘straw man’ defendant, the decree of the trial court was void [and] would not support an appeal and the appeal must be dismissed.”
293 Ala. at 73-74, 300 So.2d at 109-10 (emphasis added). The Court acknowledged that “the Attorney General has the right and power to file suits for declaratory judgment,” but, nevertheless, pointed out that “the parties must be damaged and seeking a remedy, not just-advice.” 293 Ala. at 74-75,300 So.2d at 111. (Emphasis added.).
The observations of Justice Jones in a special concurring opinion were even more pointed. He stated: “The Office of the Attorney General allowed itself, wittingly or unwittingly, to be ‘used ’ an.d in turn sought to ‘use’ this Court in order to get an advisory ruling _ The narrow. scope of review invoked by the issues ... is indicative of the ‘sweetheart’ nature of the proceedings.” 293 Ala. at 75, 300 So.2d at 111 (emphasis added).
Reduced to its essence, therefore, the holding in Johnson was that the controversy was nonjusticiable because the plaintiff (the State), acting upon the relation of the attorney general, had sued a “straw man defendant,” that is, one whose position was not adverse to that of the plaintiff and one against whom the judgment would be ineffective in any event. Also more or less implicit in the Court’s rationale was the conclusion that the State had no standing to commence the action, because it had suffered no injury and, consequently, was not “seeking a remedy.”
The controversy in Johnson is closely analogous to the one in this case, and the rationale in that case is particularly pertinent in this one. Indeed, as to the claim of the plaintiff State against the defendant Judge Moore, there is not even facial adverseness. On the contrary, the pleadings show, on the face, that the plaintiff and Judge Moore actually support one another. More specifically, the State does not seek a declaration that Judge Moore’s actions are incorrect in any respect. On the contrary, the complaint— particularly, in those emphasized portions quoted above — extols the actions of Judge Moore and seeks a judgment declaring that *962 his practices are eminently corred and must be sanctioned. The State does not allege that it has been harmed in any manner by Judge Moore’s practices. It does not seek to interfere with this defendant’s practices, but, in fact, seeks to perpetuate this defendant’s conduct.
Predictably, Judge Moore, in his answer, admitted all the substantive allegations in the complaint.[3] As we stated above, Judge Moore “join[ed] with the State of Alabama in requesting a judgment” declaring that the challenged practices were constitutional. (Emphasis added.) In other words, this defendant expressly agrees with the plaintiff that his practices are constitutional and that he is entitled to continue them in perpetuity.
The absence of adverseness has been evident throughout this litigation. It was evidenced, for example, by the fact that Judge Moore was the only defendant who opposed removal of the action to the federal court. Indeed, the AFA and the ACLUA, at various times throughout the litigation in the trial court, contended that Judge Moore should be realigned as a plaintiff.
Judge Moore thus goes further than the defendant superintendent of banks in Johnson, who took no position on the merits. Judge Moore takes a position on the merits, but he takes a position that is identical to that of the State, and he argues it strenuously. As between the State and Judge Moore, there exists no controversy, whatever — riot even a contrived one. This is not what lawsuits are about.
Moreover, “[declaratory judgment actions cannot be invoked merely to try disputes involved in another action, for such contentions máy legally be made an issue in the pending action.” 2 W. Anderson, Actions for Declaratory Judgments § 401, at 972 (2d' ed.1951). When the State filed its complaint, any controversy that did exist had been presented in a case then pending in the United States District Court.
We are convinced, therefore, as was Justice Jones in Johnson, that “[t]he Office of the Attorney General, [has] allowed itself, wittingly or unwittingly, to be ‘used ’ and in turn [has] sought to ‘use’ this Court in order to get an advisory ruling.” 293 Ala. at 75, 300 So.2d at' 111. We will not, however, allow the judiciary of this state to become a political foil, or a sounding board for topics of contemporary interest. We hold, therefore, that the claims of the plaintiff, the State of Alabama, are not justiciable. As we shall now demonstrate, the claims of the counterclaim plaintiffs, the AFA and the ACLUA, stand on no better ground.

II. The Claims of the Counterclaim Plaintiffs

As discussed previously in this opinion, the ACLUA, the AFA, and Judge Moore counterclaimed against the State. The ACLUA and the AFA sought to enjoin the State of Alabama, acting “by and through” its governor and attorney general, (1) from permitting “circuit judges ... to open-public court proceedings with prayer in the presence of jurors,”-and (2) from “permitting] the depiction of the Ten Commandments on the walls of public courtrooms as an acknowledgment of G-d, ... without regard to whether ... the depiction ... is ... in any context other than a religious one.” (Emphasis added.)
Judge Moore sought a “judgment declaring that the State of Alabama does not have authority to prohibit ... any ... circuit judge, from displaying the. Ten Commandments in his courtroom or from having a prayer at the beginning of court.” He specifically challenged the assertions in ¶ 20 of the State’s complaint that “[t]he State of Alabama, through its Judicial Department, has supervisory authority over its circuit judges and the manner in which they conduct proceedings.”
The trial court dismissed the counterclaims “insofar as they state a cause of action against the State of Alabama.” None of the counterclaimants sought review of that dismissal. Instead, the AFA and the ACLUA amended their counterclaims to include a claim against Chief Justice Hooper in his official capacity as “administrator.” Judge Moore did not amend his counterclaim to *963 state a claim against Chief Justice Hooper. Therefore, the only remaining counterclaims are those of the AFA and the ACLUA against Chief Justice Hooper.
Those counterclaims seek the relief that the ACLUA had originally sought in its letters dated June 9, 1993, and July 6, 1994, to former Chief Justice Sonny Hornsby, namely, action by the “State Judicial System” to cause the cessation of pre-jury session prayer by all of Alabama’s circuit judges. They also seek an injunction against displaying “religious symbols, without regard to the context of the display, on the walls of public courtrooms.” (Emphasis added.)
There is a flaw, however, in the manner in which this relief has been sought. That flaw,' and it is a fatal one, consists of the fact that the complainants have sued the Chief Justice of the Supreme Court of Alabama, who is unable to provide the relief they seek.
This fact was the only basis of Chief Justice Hooper’s defense to the counterclaims. In his motion to dismiss, which he filed on July 17, 1996, Chief Justice Hooper argued that, “as a matter of law,” he, acting unilaterally, “has no authority to control the conduct of a circuit judge.” This contention was repeated by the attorney general during a hearing on the dismissal motion conducted on August 13,1996. He argued:
“[Attorney general]: My motion only relates to whether or not they have stated a valid claim against Chief Justice Hooper.
“And my argument is simply this, Your Honor; if you believe that Chief Justice Hooper has the lawful authority under Alabama law to tell you what you can — how you can decorate this courtroom and how you can deal with your jurors — Chief Justice Hooper acting by himself, not with any other members of the Supreme Court, just the Chief Justice — if he has that lawful authority — if he can tell you, Judge Price, that you need to remove the American flag from this courtroom or you need to treat jurors a certain way, then I say deny my motion.
[[Image here]]
“... And there is no single officeholder like the Chief Justice who can micromanage how the circuit judges run their courtroom.”
(Emphasis added.) We agree with the contentions of the Chief Justice and the attorney general, namely, that the Chief Justice, acting unilaterally, cannot provide the relief sought by the counterclaim plaintiffs.
The powers and duties of the Chief Justice are described in various provisions of the Constitution and the Code of Alabama. The primary source of his authority is Ala. Const. 1901, amend. 328, § 6.10, which provides in pertinent part: “The chief justice of the supreme court shall be the administrative head of the judicial system. He shall appoint an administrative director of courts and other needed personnel to assist him with his administrative tasks.” (Emphasis added.) Pursuant to his administrative authority, he may “take affirmative and appropriate action to correct or alleviate any condition or situation adversely affecting the administration of justice within the state,” Ala.Code 1975, § 12-2-30(b)(7), and he may “take any such other, further or additional action as may be necessary for the orderly administration of justice within the state, whether or not enumerated in this section or elsewhere,” § 12-2 — 30(b)(8).
These and other provisions make it clear, however, that the Chief Justice’s authority is administrative. A common definition of “administration” is “a furnishing or tendering according to a prescribed rite or formula.” Webster’s Third New International Dictionary of the English Language 28 (Unabridged) (1986) (emphasis added). The source of his specific authority is the Court, itself, as expressed elsewh'ere in the Constitution and the Code of Alabama.
Authority to issue such “orders as may be necessary [for] general supervision and control of courts of inferior jurisdiction,” is vested by Amendment 328, § 6.02, in the Supreme- Court. Similarly, it is the Supreme Court that is charged by Amendment 828, § 6.08, with “adopting] rules of conduct and canons of ethics ... for the judges of all courts of this State.” Again, it is the Supreme Court-that is charged by Amendment 328, § 6.11, with the duty to “make and promulgate rules governing the administra *964 tion of all courts and rules governing practice and procedure in all courts.”
The significance of the term “supreme court” in §§ 6.02, 6.08, and 6.11 is illustrated by Ala. R.App. P. 16(b), which provides:
“The concurrence of five justices in the determination of any cause shall be necessary ..., except when, by reason of disqualification the number of justices ... is reduced, in which event the concurrence of a majority of the justices sitting shall suffice; but, in no event, may a cause be determined unless at least four justices sitting shall concur therein.”
(Emphasis added.) Indeed, as a “hornbook” principle of practice and procedure, no appellate pronouncement becomes binding on inferior courts unless it has the concurrence of a majority of the Judges or Justices qualified to decide the cause. Simply stated, action by the Chief Justice is not synonymous with action by the “Court.”
The trial court, on November 22, 1996, ordered “[t]he counter[claim]-defendants[, including Chief Justice Hooper] in their official capacities], their agents, servants, employees, and all those acting in concert with them, ... to take all reasonable steps to prevent the conduct of unconstitutional prayer in the public courts of this state.” That judgment could be binding only on Chief Justice Hooper, who is a party to the litigation in his official capacity.
Actions will be deemed “not justicia-ble ... ‘where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive.’” Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994) (emphasis added in Stamps) (quoting E. Borchard, Declaratory Judgments 31 (1934)).[4] In other words, actions will be deemed nonjusticiable “[w]hen the defendant has no power to affect the plaintiffs rights.” E. Borchard, supra, at 36. That is the situation in'this case.
In summary, despite the public attention it has attracted, the lawsuit out of which these appellate proceedings have arisen does not involve a justiciable controversy. It was “invoked merely to try disputes involved in another action.” See 2 W. Anderson, Actions for Declaratory Judgments § 401, at 972 (2d ed.1951). No appeal was taken from the judgment of dismissal in the federal district court. Adverseness between the State and Judge Moore is manifestly nonexistent, and the counterclaim defendants have no power to provide the relief sought by the AFA and the ACLUA.[5] The record does not reveal a cross-claim against Judge Moore in either his individual capacity or in his official capacity.
Because the controversy was nonjusticia-ble, the trial court lacked subject matter jurisdiction to enter its judgments; those judgments were, therefore, void. “[A] void judgment will not support an appeal .... ” Underwood v. State, 439 So.2d 125, 128 (Ala.1983); see also State ex rel. Baxley v. Johnson, 293 Ala. 69, 300 So.2d 106 (1974). Consequently, the judgments are vacated and these appellate proceedings are dismissed.
1951975 — JUDGMENT VACATED AND PETITION DISMISSED.
1960572 — JUDGMENT VACATED AND APPEAL DISMISSED.
1960839 — JUDGMENT VACATED AND APPEAL DISMISSED.
1960927 — JUDGMENT VACATED AND APPEAL DISMISSED.
ALMON and SHORES, JJ., concur.
*965 MADDOX and HOUSTON, JJ., concur in the result.
HOOPER, C.J., and KENNEDY, BUTTS,[6] and SEE,[7] JJ., recuse themselves.

. The record does not reveal a cross-claim against Judge Moore, either in his individual capacity or in his official capacity.

. None of the parties question the justiciability of this controversy. However, justiciability is jurisdictional, that is, "[t]here must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief.” State ex rel. Baxley v. Johnson, 293 Ala. 69, 73, 300 So.2d 106, 110 (1974). Unless the trial court has before it a justiciable controversy, it lacks subject matter jurisdiction and any judgment entered by it is void ah initio. Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 (Ala.1994); Luken v. BancBoston Mortg. Corp., 580 So.2d 578 (Ala.1991); Wallace v. Burleson, 361 So.2d 554, 555-56 (Ala.1978). "This Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction.” Stamps, supra, 642 So.2d at 945 n. 2.

. The exception, of course, was the allegation in ¶20, which we shall discuss again in Part II.

. Stamps involved an action "brought by special education teachers against their employers seeking a judgment construing [the Nursing Practices Act, Ala.Code 1975, §§ 34-21-1 to -63,] and declaring that their duties subjected] them to prosecution by the board of nursing for the unlicensed practice of nursing.” 642 So.2d at 944. This Court held that the action was nonjusticia-ble because of the failure of the employees to join as a defendant the board of nursing. Id. at 944-45.

. Because the "conduct of a circuit judge” cannot be regulated by the Chief Justice, "standing alone,” a fortiori it cannot be regulated by the Governor and the attorney general. This is so, because, like the Governor, the attorney general is an officer of the executive branch of government. McDowell v. State, 243 Ala. 87, 89, 8 So.2d 569, 570 (1942). In our tripartite system of government, executive branch officials have no colorable authority to control a circuit judge’s courtroom demeanor.